We'll hear the next case, Estrella v. Berryhill. May it please the Court, my name is Carolyn Kubitschek, I represent the appellant Brenda Estrella and we request two minutes for rebuttal. In this Social Security case, the Administrative Law Judge erred in rejecting the opinion of Ms. Estrella's treating psychiatrist that Ms. Estrella's major depressive disorder caused marked limitations in much of her ability to function on a day-to-day basis and on a examiner to find that rather than her illness fluctuating, as the record showed, that her illness would always be exactly the same as it had been on one date, September 4th, 2012. Didn't Dr. Flash have all of the other physicians' treatment notes? Unfortunately, he did not. He did not have any treatment notes. He based the entire history of her treatment on what Ms. Estrella told him and she is not a very good historian given her illness. Your Honor, this is quite surprising because Social Security's regulations own rules say that the Social Security Administration should furnish a consultative doctor with the medical records that are in Social Security's possession, but they did not do so and so Dr. Flack could only base his determination on what he saw on that one date, September 4th, and that was at one of its less severe points. The ALJ did look at the treating notes and said that the notes were inconsistent with the treating psychiatrist's opinion. That's correct. The ALJ said that, but in doing so, the ALJ chose specific treatment notes at specific times when Ms. Estrella's depression was not so bad. And in our brief, there's sort of a timeline of how she Did you know that her depression was not so bad? I mean, is that not substantial evidence to support the finding? No, Your Honor, because this was a situation where she has an illness that fluctuates and mental illness, particularly depression, is known to be cyclical and if when a person cycles between less severe depression and profoundly severe depression, then in fact the Seventh Circuit said in the Bauer case that that person is not employable. If half the year she is pretty much a basket case and doesn't leave her room, in the other half, she might be able to do a simple job, that makes her unemployable. And as this Court has said and all courts of appeals have said, in order to be able to work, an individual must be able to do the job day in and day out in the competitive and sometimes stressful conditions in which real people operate in the real world. And that means full-time, not to say to an employer, excuse me, boss, but I'm going to be out for the next six months, okay? Because that's not okay. Now, but the other, the reason that the ALJ gave for disregarding Dr. Drone, the reason that he stated in his decision was that she did not suffer from suicidal ideations, homicidal ideations, excuse me, what? I'm sorry, it's on page 28. Basically, that she, oh, and hallucinations, well, that is not the dividing line for determining whether somebody is disabled by mental illness. This Court and other courts have said, you have to focus on whether somebody can work, not whether they're suicidal, homicidal, or hallucinating. Oh, and that she didn't have cognitive limitations, meaning she wasn't mentally retarded. And all of these are true, but that doesn't render her employable. That, if so, then Social Security benefits would be restricted to the most profoundly impaired of the impaired. The test must be, can this person do a job? So then the second reason that the ALJ discounted Dr. Drone's reports, and as Your Honor knows, he submitted three reports. And the second and third reports, which were done in October and November of 2013, showed that Ms. Estrella was actually getting sicker than she had been at the time of his first report in 2012. Although, even in 2012, her illness was quite serious. I wanted to ask you, in response to Judge Chin's question, you said that the ALJ made reference to Dr. Drone's notes in rejecting Dr. Drone's assessment and accepting that of the physician that it, well, I don't think it was a physician, it was a psychologist that- It was a psychologist, yes, Your Honor. Dr. Drone's a psychiatrist, right? Yes, Your Honor, and that is an important- And by the way, the ALJ didn't distinguish between the two or state a reason why he would find more credible a psychologist's determination as opposed to a psychiatrist. But having said that, didn't the ALJ really focus on Dr. Drone's global assessments of function scores as opposed to his treatment notes? And isn't that the point you're trying to drive home, that Social Security itself accepts or recognizes that these GAFs aren't as reliable as the actual treatment notes themselves? Now, you're criticized by your opponent, saying that's an argument you didn't make, but your argument is that the ALJ didn't have a sound base, your legal argument is that the ALJ didn't have a basis of law to reject the treating physician. This is one factual manifestation of why he shouldn't have done that. Precisely, Your Honor, the global assessment of functioning scores have been discontinued by the American Psychiatric Association because basically they didn't work and they were being misinterpreted. They were then explicitly discontinued by the Social Security Administration itself, and the Social Security Administration issued a directive which is contained in my adversary's brief. My point is that had the ALJ examined the treatment notes, he would have seen a more regular assessment of your client as being suffering from substantial mental impairments that precluded her from working. Yes, Your Honor. The treatment notes, in fact, do back up what Dr. Drone wrote in his reports. If you look at all of the treatment notes, not merely those treatment notes on the days when or during the short periods of time when she was doing better. And as Your Honor said, the Social Security Administration provides a six-factor test for determining the weight to be given an opinion of a physician, and the Social Security Administration and this court require that the ALJ consider those six factors. And here, the ALJ did not consider the factors either explicitly or implicitly. He violated his agency's own rules and he should be ordered to comply. And that's why we are asking that the matter be remanded for a hearing where the ALJ consider all the factors, including her physical impairments, which haven't been discussed. Did I correctly understand you to say that the ALJ didn't look at Drone's treatment notes? No, the ALJ did not correctly consider the treatment notes. He rejected them on the grounds that, number one, she is not suicidal or homicidal or suffering from psychosis or hallucinations. He also... Isn't that rather an overstatement? But that's what the ALJ is definitely... What he said was, during his, meaning Dr. Drone, examination of the claimant, most of her mental status examinations were normal. She only had at most mild depression. She denied having hallucinations and so forth. And you've, quite a few times, focused on the last of the three clauses and ignored the first two. Have you not? Well... Well, Your Honor, what the ALJ said is precisely the point I was trying to make. Perhaps he did it more elegantly. In his decision, he seized on two treatment notes. Dr. Drone's been treating Ms. Estrella since 2003. He seized on two treatment notes during a period when Ms. Estrella's depression was less bad. I'm looking at page 28 of the record, by the way. And the treatment notes are July 3rd and August 3rd. Yes. Those treatment notes were during a period of time which we absolutely agree... Those two. Those two, yes. But it's clear from the preceding sentences, really, that he looked at all of them, isn't it? He drew conclusions as to what her mental status was most of the time. Yes? But that is exactly what the treatment notes don't say. The treatment notes show that Ms. Estrella's condition fluctuated and... Look, that's a characterization or an interpretation. The notes, in fact, show different things at different dates, don't they? That was the point. The notes show periods of lesser illness, then followed by plunging down into deeper illness. And I think by 2013, which was the date of the... He did not reject the doctor's opinion solely on the ground that she was not hallucinating or suicidal. He did not focus only on notes from two visits. He looked at the whole picture. He mentioned the two visits. He mentioned lack of suicidal thoughts, but his conclusions were much broader. The conclusions, Your Honor, we would submit are not warranted by the treatment notes themselves. The treatment notes, in fact, show a woman who is struggling with profound depression, but at times she has gotten better, and then she got worse. And particularly by the end of 2013, she was in very bad shape. And the ALJ's duty is to determine whether or not she was disabled. The question is whether there is substantial evidence. And I, you know, without in any way making light of anything with respect to anybody, there's a lot of evidence that Winston Churchill suffered from profound depression from time to time, and he still managed to come through during World War II. And he had a full-time job. Your Honor, the fact that there are some remarkable individuals, and Winston Churchill is absolutely a remarkable individual, who are able to work despite crippling depression, does not mean that Ms. Estrella is capable of working despite crippling depression. My point is whether there is substantial evidence to justify the ALJ in disagreeing with the treating physician's assessment. That's all. And we would submit that a careful reading of the treatment notes, as described in the brief itself, would show that there was not substantial evidence to disagree with the opinion of the treating physician. And that, in fact, the ALJ partially accepted it because he said she was limited to following simple instructions, although he later on then abandoned that conclusion and said, oh, she can do anything, even a complicated job. Thank you. You have some time for rebuttal. We'll hear from the Governor. Good morning. My name is Candace Appleton, and I'm an Assistant U.S. Attorney in the Eastern District of New York, and I'm here representing the Commissioner of Social Security. Basically, Ms. Estrella was a younger individual on the date she alleges she was unable, by depression, to do any work whatsoever. She has two years of college. She worked as an office manager for 14 years, notably stopping work in 2008, not because of her impairments, but because the office closed. The ALJ did find that depression was severe and incorporated into his RFC finding that she could not perform any high production or quota work and would be off task for no more than 5% of the workday. He put this into a hypothetical to the VE, and the VE found that she could, in fact, do her past work as an administrative assistant. Interestingly enough, the ALJ went a bit further and also made a possible Step 5 finding, saying that under the medical vocational guidelines, given her young age, her two years of college, her light RFC, that there was other work, other light, unskilled work in the national economy that she could perform. Despite Ms. Estrella's many arguments, many of which were raised for the first time before this court, she had a very competent Social Security attorney representing her at the hearing. She had a very competent attorney representing her at the district court, and none of these issues were raised. Although we did address them, and I feel we can prevail on all of them. Her major argument is that the ALJ did not give controlling weight to her psychiatrist's opinions. However, as we know, in order to get weight, it'll only be given weight if it is well supported by medically acceptable clinical evidence. And in the case of a mental impairment, that clinical evidence, we're not talking MRIs or EMGs, we're talking about the mental status examination findings. And I think the ALJ made a good argument, several arguments, as to why Dr. Drone's opinions should not be prevailing. They were, in fact, inconsistent with his own treatment notes and examination findings. It's interesting the note that Plaintiff applied for benefits in 2008. She received no psychiatric treatment between 2007 and 2012 when she applied for SSI and SSD. And her first appointment was the month after she applied for benefits. She did get psychiatric treatment, interestingly enough, for depression in 2002, 2004 to 2005. And she continued to work at her job, obviously successfully, as an administrative assistant office. So the concept of this secular illness, rending her unable to do her job, just does not pass muster. Some of, most of Dr. Drone's notes from the time period while she was working are very similar to his findings during the time period that is under examination here. It is important to note that, speaking of cyclical, sometimes she was in worse shape because Dr. Drone noted specifically that she was not taking her psychiatric medication on several occasions during the relevant time period. And this was a pattern that was repeated because she did it between 2004 and 2005. And this court has stated in MATA that even though people with mental illness have good days and bad days, nonetheless, substantial evidence in the record supports the ALJ's conclusion that this plaintiff, with the proper treatment, could perform work on a regular and continuing basis. Not only was Dr. Drone's opinions contrary to his own examination findings, they were contrary to the findings of Dr. Flack. And the fact that Dr. Flack is a psychologist under social security law makes no difference between that and the opinion of a psychiatrist. I'm not suggesting it does, but the Bruger factors require the ALJ to note the difference between the two. I don't think he has to note. I think he has to recognize that Dr. Drone was a psychiatrist. I think he recognized that. I think he knew that he had treated her for a long time. And I think he went successfully through the other characteristics of treating physician. He found inconsistencies. He looked at her treatment. He looked at the fact that she very often, or certain, would not take her psychotropic depressive medication. And those were the times when in fact her complaints were worse. But overall, the examination findings were not that dire. And I found it very interesting that Judge Kunst, in particular, was so impressed in analyzing the treatment notes that he charted them. I don't think I'd ever seen that done by a federal court judge. And it was persuasive to look at that chart of his. It was also inconsistent with, we had a finding from a Dr. Zlotyk, who not only is a neurologist, but he's board certified in psychology. And he did an examination and found it to be essentially within normal limits. And overall, it was also, Dr. Drone was inconsistent with Estrella's daily activities. I think my opponent called her a basket case. There's no way she was a basket case. She told the doctors she was able to clean, shop, do laundry, cook, drive an automobile, take public transportation, socialize, go on the internet, manage her finances. She had a boyfriend, and she cared for her son and her nephew, taking them to school and to karate classes. Overall, clearly, I would say Dr. Drone's opinions do not deserve weight. We have other opinions in the evidence that show that she could, in fact, perform her past work. And if she could not perform her past work, there was other work in the national economy that she could perform. Any questions? Thank you. We'll hear the rebuttal. Thank you. It's very troubling that counsel is arguing that Ms. Estrella resumed psychiatric treatment only to get benefits. That's not the fact here. Ms. Estrella was out of treatment when she lost her job. She went into a severe depression, and then in 2010, she resumed psychiatric treatment. Two years later, in 2012, she applied for benefits, so that it's simply not appropriate to say that, oh, she went back into treatment because she wanted to bolster her application. With regard to issues not raised below, as the court is aware, the court ordered Ms. Estrella to be represented by pro bono counsel and specifically identified four issues that were to be briefed. And whether or not the government is now saying that those issues were raised below, our reply brief shows exactly where the issues were briefed. But this court has spoken and has found these issues to be important. With regard to whether or not Ms. Estrella was taking her medication, the administrative law judge did not find that she was not disabled because she wasn't taking her medication. If an administrative law judge is asked to make such a finding, there is a very, very careful procedure that the administrative law judge must follow before determining that a person is not disabled because of failing to take medication. And in fact, the treatment notes do not show that Ms. Estrella continuously failed to take medication. With regard to Dr. Drone's treatment notes, I flipped to just one of them on page 500, which shows that she was being prescribed medication. There is no indication that she wasn't taking it. In fact, the doctor said continue taking the medication. She was, based on his observations, wary, tense, downcast. Her demeanor and her mood were depressed. In fact, these treatment notes completely support Dr. Drone's assessment of how she functioned. Why don't you finish up? I'm sorry. Okay. And so we request again that the case be remanded so that there can be a serious consideration not only of her mental illness, but also the combination of her mental illness, the carpal tunnel syndrome, which the administrative law judge said limits her ability to do fine manipulation, and her back problems, which limit her ability to sit, stand, walk, lift, and carry. Thank you. All reserved to city.